720 So.2d 1091 (1998)
WPB, LTD., a Florida Limited Partnership, Stiles at Palm Beach, Ltd., a Florida Limited partnership, as General Partner of WPB, Ltd., Terry W. Stiles, as General Partner of Stiles at Palm Beach Ltd., and Terry W. Stiles, individually, Appellants/Cross-Appellees,
v.
George P. SUPRAN, as Trustee, Appellee/Cross-Appellant.
No. 97-1668.
District Court of Appeal of Florida, Fourth District.
August 12, 1998.
Rehearing Denied September 29, 1998.
*1092 Bryan W. Duke, Fort Lauderdale, for appellants/cross-appellees.
Bard D. Rockenbach, and Daniel M. Bachi of Sellars, Marion & Bachi, P.A., West Palm Beach, for appellee/cross-appellant.
GROSS, Judge.
The main issue in this appeal is whether section 687.01, Florida Statutes (1989), controls a commercial lease which provides that interest on a security deposit "shall accrue to the tenant," but fails to discuss the rate at which the interest will accrue. We hold that the statute applies to supply the interest rate in such a case, and affirm.
In 1989, appellee George Supran entered into a commercial lease with appellant/landlord WPB, Ltd. The lease term was from April 16, 1990 until April 15, 1996. The lease required Supran to post a security deposit of $20,041.66. As a result of negotiations, section 3 of the lease, concerning the security deposit, provided in pertinent part:
If the Tenant complies with all such terms, covenants and conditions, then within thirty (30) days after termination of this Lease or any renewal or extension thereof, the Landlord shall return said sum to the Tenant, less any deductions made by the Landlord therefrom to pay or reimburse the Landlord for the cost, losses or damages specified above.... Such money shall bear interest which shall accrue to the Tenants, and may be commingled with other security/damage deposits or funds of the Landlord.

(Emphasis supplied).
The lease provision allowing the landlord to commingle the security deposit with its own funds gave WPB the ability to make use of the money during the lease term. After the conclusion of the lease, WPB returned the $20,041.66 security deposit to Supran. In addition, WPB tendered an interest payment of $3,623.58, along with a detailed interest calculation showing a rate varying from 1.75% to 4.75% over the course of the lease. Supran refused the tender of interest, contending that he was entitled to the statutory interest rate pursuant to section 687.01, Florida Statutes (1989).
Section 687.01, Florida Statutes (1989), provides:
687.01 Rate of interest in absence of contract.In all cases where interest shall accrue without a special contract for the rate thereof, the rate shall be 12 percent per annum, but parties may contract for a lesser or greater rate by contract in writing.[1]
This case falls squarely within section 687.01. Under section 3 of the lease, interest was to accrue to the tenant on the security deposit. There was no "special contract" for the interest rate. A "special contract" has been defined as one with
peculiar provisions or stipulations not found in the ordinary contract relating to the same subject matter. These provisions are such as, if omitted from the ordinary contract, the law will never supply.
17 C.J.S. Contracts § 10 (1963); see also Armstrong v. Smith, 49 Cal.App.2d 528, 122 P.2d 115, 118-19 (1942). A special contract is always an express contract, "one whose provisions are expressed and not dependent on implication." Fitzpatrick v. Vermont State Treasurer, 144 Vt. 204, 475 A.2d 1074, 1077 (1984).
Consistent with this construction of the phrase, the Florida Supreme Court has used the term "special contract" to describe the type of explicit contractual provision required to modify a common carrier's common-law liability. Clyde Steamship Co. v. Burrows, 36 Fla. 121, 18 So. 349 (1895);[2]see also *1093 Summerlin v. Seaboard Air Line Ry., 56 Fla. 687, 47 So. 557, 558 (1908); Bryant v. Food Machinery and Chemical Corp., 130 So.2d 132, 134-35 (Fla. 3d DCA 1961) (holding that "notice to the guarantor of [a] transaction as between principal-debtor and guarantee is purely one of special contract"); Blackburn v. Alachua County Broad. Co., 126 So.2d 303, 305 (Fla. 1st DCA 1961) (indicating that "where a person places property with a broker for sale, he impliedly agrees, in the absence of a special contract, to pay the customary commission"). Reference to the 1895 case of Clyde Steamship is appropriate to construe section 687.01, since the term "special contract" first appeared in the 1892 version of the statute. See Ch. 2320, Laws of Fla. (1892).
Both parties agree that in this commercial tenancy, the lessor's obligation to pay interest to the tenant on the security deposit arose from a provision in the lease. Section 3 of the lease stated that the security deposit would bear interest accruing to the tenant and that it could be commingled with "other security/damage deposits or funds of the Landlord." As to the rate of interest to be paid, the lease was silent. There was no "special contract," no explicit contractual provision fixing the rate. Section 687.01 therefore determines the rate of interest.
We reject appellant's argument that section 687.01 applies only when "interest automatically accrues" without the necessity of a provision in a contract. We recognize that section 687.01 applies in non-contract cases where the law requires that a liquidated debt accrue interest. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212 (Fla.1985) (negligence case where insurer paid a fire loss claim to its insured, then brought subrogation action against tortfeasor causing loss); Bergen Brunswig Corp. v. State, 415 So.2d 765 (Fla. 1st DCA 1982) (action for conversion). For example, in Kissimmee Utility Authority v. Better Plastics, Inc., 526 So.2d 46 (Fla.1988), the supreme court allowed prejudgment interest at the rate set in section 687.01 in a case involving a power customer's claim for refund due to an overcharge by the utility.
Section 687.01 also applies to situations where the obligation to pay interest does not arise as a matter of law, but is created by contract. The narrow reading urged by appellant is contrary to the broad language of the statute, which applies "[i]n all cases where interest shall accrue." (Emphasis supplied). We see no reason to distinguish this case from those situations where the statute has been used to set prejudgment interest in breach of contract cases, where the contract is silent on the rate of interest that applies in the event of a default. See Brite v. Orange Belt Sec. Co., 133 Fla. 266, 182 So. 892 (1938); Celotex Corp. v. Buildex, Inc., 476 So.2d 294 (Fla. 3d DCA 1985); Secrist v. National Serv. Indus., Inc., 395 So.2d 1280 (Fla. 2d DCA 1981).
In Secrist, the second district used the contract rate of 1½% per month to determine the prejudgment interest rate for unpaid rental charges; however, because the contract was silent as to the interest rate applicable to a liquidated damages clause, the court applied section 687.01. The third district in Celotex applied the section 687.01 interest rate to set prejudgment interest in favor of a building materials supplier in a breach of contract action. The court reasoned that the "18% per annum on all past due accounts" which was specified in the plaintiff's invoices had not been agreed to in writing by the builder. Similarly, in Haskell v. Forest Land and Timber Co., 426 So.2d 1251 (Fla. 1st DCA 1983), the first district did not apply section 687.01 to award interest on an arbitration award, because the parties' arbitration agreement failed to provide for interest. The necessary implication of Haskell is that the statute would have been *1094 applicable to set an interest rate from the date of the arbitration award, had the arbitration contract provided for interest. 426 So.2d at 1253 n. 4; see Shakeshober v. Florida Resort Development, 492 So.2d 816 (Fla. 4th DCA 1986) (section 687.01 applied to determine interest on return of deposit where vendor had breached real estate contract).
Appellant also argues that section 687.01 does not apply to security deposits called for in a lease because of its inclusion in Chapter 687, Florida Statutes (1997), entitled "Lending Practices"; appellant contends that a security deposit is not a loan, so the statute does not apply.
The location of a law in a "particular title or chapter of Florida Statutes is not determinative on the issue of legislative intent, though it may be persuasive in certain circumstances." State v. Bussey, 463 So.2d 1141, 1143 (Fla.1985). This principle is especially applicable to section 687.01 and its similarly worded predecessors, which have been placed under four different chapter titles since 1892. In 1989, when the lease in this case was executed, Chapter 687 was entitled "Interest and Usury." Chapter 6936, Compiled General Laws of Florida (1927), Chapter 3103, General Statutes of Florida (1906), and Chapter 4849, Revised General Statutes of Florida (1920), were all contained in a chapter named "Interest and Usurious Contracts." Chapter 2320, Revised Statutes of Florida (1892), was placed in a chapter designated simply "Interest". Until the most recent change in chapter nomenclature, the law's chapter headings support the interpretation that the statute applied to all contracts, not just those dealing with loans. In the change to the current chapter title, we do not discern a legislative intent to override the general language of section 687.01.
Finally, we reject appellant's claim that an affirmance of the trial court will create havoc in the marketplace. This opinion will not apply to commercial leases which do not call for the payment of interest to the tenant on a security deposit. Nor will section 687.01 be implicated where a lease or contract sets a variable rate of interest based on some ascertainable standard.
On the cross-appeal, we agree with WPB that Stiles at Palm Beach, Ltd. was a "landlord" under the guaranty. Because the record demonstrates that Stiles had at least $200,000 in equity in the leased property, Stiles' obligation to guarantee the performance of the landlord was not triggered under the terms of the guaranty.
AFFIRMED.
DELL, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] Section 687.01, Florida Statutes (1997), now states:

In all cases where interest shall accrue without a special contract for the rate thereof, the rate is the rate provided for in s. 55.03.
See Ch. 94-239, § 10, at 1791, Laws of Fla.
[2] In the syllabus to Clyde Steamship Co. v. Burrows, 36 Fla. 121, 18 So. 349 (1895), the supreme court wrote:

In the absence of a special contract restricting or modifying a common carrier's common-law liability in some particular which the courts may not consider unreasonable, or subversive of public policy, such carrier is an insurer against all risks of loss or injury, except those resulting directly from the act of God or the public enemy, and without the intervention of human agency, while the carrier is in the line of duty.
(Emphasis supplied); Summerlin v. Seaboard Air Line Ry., 56 Fla. 687, 47 So. 557, 558 (1908) (quoting Clyde Steamship, 36 Fla. at 121, 18 So. 349).